**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| LOCAL 38N GRAPHIC COMMUNICATIONS CONFERENCE/IBT, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 4:09CV438-DJS ) |
| ST. LOUIS POST DISPATCH, LLC, | ) ) |
| Defendant. | ) |

**ORDER**

Now before the Court is defendant St. Louis Post Dispatch, LLC's motion to dismiss [Doc. #24] plaintiff Local 38N Graphic Communications Conference/IBT second amended complaint [Doc. #23]. Plaintiff opposes defendant's motion, and defendant has filed a reply brief.[1] Accordingly, defendant's motion is ready for disposition.

**Standard of Review**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that

---

[1] Defendant states in its reply brief that plaintiff's memorandum in opposition was filed ten days after the motion to dismiss was filed, and was therefore untimely. Doc. #30, p. 2 n.1. The Court notes that E.D. Mo. L.R. 7-4.01(B) permits seven days to file a memorandum in opposition to a motion (other than a motion for summary judgment). Further, Rule 6(d) of the Federal Rules of Civil Procedure provides for an additional three days when electronic service is made pursuant to Rule 5(b)(2)(E), and § II (G) of the Eastern District of Missouri's administrative procedures for case management and electronic case filing references Rule 6(d)'s statement of an addition three days to the prescribed period for service by electronic means. Plaintiff's opposition was timely filed.

the pleader is entitled to relief." The pleading standard Rule 8 announces does not require "detailed factual allegations," <u>Bell Atl. Corp. V. Twombly</u>, 550 U.S. 544, 555 (2007), but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Aschcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). A pleading that offers legal conclusions, a formulaic recitation of elements, or naked assertions devoid of factual enhancement does not suffice. <u>Id.</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u> A claim has facial plausibility when the alleged facts allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u> When a complaint contains well-pleaded factual allegations, a court should assume the well-pleaded facts are true and then determine whether they plausibly entitle the plaintiff to relief. <u>Id.</u> at 1949-50.

Only well-pleaded facts are accepted as true, while "[t]hreadbare recitals of the elements of a cause of action" and legal conclusions are not. <u>Id.</u> at 1949. "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." <u>Id.</u> at 1950. When a complaint contains well-pleaded factual allegations, a court should determine whether they plausibly entitle the plaintiff to relief. <u>Id.</u> If the well-

pleaded facts do not plausibly entitle the plaintiff to relief, the claim should be dismissed. Id.

Generally, a court must ignore materials that are outside of the pleadings; however, a court may consider some materials that are part of the public record or those that are necessarily embraced by the pleadings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 299 (1990) (opining that a trial court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

**Second Amended Complaint**

In its second amended complaint, plaintiff alleges that it is a labor organization within the meaning of § 2(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 152(5), 301(a), and that defendant is an employer within the meaning § 2(2) of the LMRA, 29 U.S.C. §§ 152(2), 301(a). Plaintiff further alleges that it and defendant are parties to collective-bargaining agreements, including an agreement effective November 15, 1994, through April 17, 2002 ("1994 Agreement"), and an agreement effective April 18, 2002, through April 1, 2006 ("2002 Agreement").[2] Articles X and XI of these agreements contain a

---

[2]Plaintiff alleges that the 2002 Agreement was effective from April 18, 2002, to April 1, 2006. Doc. #23, p. 2. Defendant, in its memorandum in support of its motion to dismiss, states that the 2002 Agreement was effective from October 14, 2002, to October 13, 2006.

3

mechanism for resolving grievances, including provisions for the selection of an arbitrator to resolve disputes. Attached as an exhibit to defendant's motion to dismiss are copies of the 1994 Agreement and the 2002 Agreement. The Court considers these agreements as materials necessarily embraced by plaintiff's second amended complaint. Contained in both agreements are arbitration provisions. In both agreements, article XI, section 4 states as follows:

> Grievances which arise under this Agreement but which are based on events which occur after its termination are expressly excluded from the jurisdiction of the arbitrator.

Doc. #25-2, p. 9; Doc. #25-3, p. 9.[3]

In Count I, plaintiff alleges that on October 31, 2008, defendant unilaterally changed the healthcare benefits of those individuals who retired under the 1994 Agreement by increasing the amount of retiree-paid healthcare premiums. In Count II, plaintiff alleges that on January 1, 2010, defendant unilaterally changed the

---

Doc. #25, p. 2. Defendant has submitted a copy of the 2002 Agreement, which has stated effective dates of October 14, 2002, to October 13, 2006. Doc. #25-3, p. 4. In its memorandum in opposition to defendant's motion to dismiss, plaintiff cites to Doc. #25-3 when referencing the language of the 2002 Agreement. See, e.g., Doc. #27, p. 3. Accordingly, the Court proceeds under the assumption that plaintiff mistakenly pled incorrect effective dates for the 2002 Agreement. Of note, plaintiff does not dispute the existence of the language contained in article XI, section 4 of the 2002 Agreement. Doc. #27, p. 24.

[3] Another case pending in this district, Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC, 4:09CV412-RWS, involves a similar dispute. However, a substantial difference in the agreements underlying these actions exists, namely, the language included in article XI, section 4 of the agreements between the parties to this action.

healthcare benefits of those individuals who retired under the 1994 Agreement by eliminating healthcare for retirees who are Medicare eligible and requiring retirees who are not Medicare eligible to pay 100% of the healthcare premium. Finally, in Count III, plaintiff alleges that on January 1, 2010, defendant unilaterally changed the healthcare benefits of those individuals who retired under the 2002 Agreement by eliminating healthcare for retirees who are Medicare eligible and requiring retirees who are not Medicare eligible to pay 100% of the healthcare premium. Plaintiff filed grievances concerning these changes and demanded arbitration. Plaintiff alleges that defendant denied the grievances, and has refused plaintiff's demands for arbitration. Plaintiff seeks an order from this Court compelling arbitration of these grievances.

**Discussion**

When it enacted the Federal Arbitration Act ("FAA"), Congress intended for parties who have agreed to arbitrate disputes to do so in a speedy manner without delay or obstruction by the courts. MedCam, Inc. v. MCNC, 414 F.3d 972, 974 (8th Cir. 2005) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967)). However, the initial question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is "undeniably an issue for judicial determination." Crown Cork & Seal Co. v. Int'l Assoc. of Machinists & Aerospace Workers, 501

F.3d 912, 917 (8th Cir. 2007) (quotation omitted). "Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'" Litton Fin. Printing Div. v. Nat'l Labor Relations Bd., 501 U.S. 190, 208 (1991) (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651 (1986)).

> [T]he FAA limits a district court's initial role in any challenge to an arbitration agreement to deciding whether the making of the agreement for arbitration or the failure to comply therewith is at issue. As to whether the making of the agreement for arbitration is in issue, our Circuit has refined this inquiry to asking 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute <u>falls within the scope</u> of the arbitration agreement.

MedCam, 414 F.3d at 974 (internal quotations omitted).

There is a strong federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective-bargaining agreements. Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 254 (1977). "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." Indus. Wire Prods., Inc. v. Costco, 576 F.3d 516, 520 (8th Cir. 2009) (quoting MedCam, 414 F.3d at 975). Nevertheless, arbitration is "a matter of contract, and 'a party cannot be required to submit to arbitration any dispute which he

6

has not agreed so to submit.'" Crown Cork, 501 F.3d at 916 (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)); see also Nolde Bros., 430 U.S. at 250-51 ("[T]he arbitration duty is a creature of the collective-bargaining agreement and...a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so."). A motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Indus. Wire Prods., 414 F.3d at 975 (quoting MedCam, 414 F.3d at 975).

Because of the strong preference for arbitration, the expiration of a collective-bargaining agreement does not necessarily extinguish "a party's duty to arbitrate grievances arising under the contract." Nolde Bros., 430 U.S. at 251.

> [T]he parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship.

Id. at 255. However, the presumption in favor of arbitration of matters may be negated if done so "expressly or by clear implication," id., and is therefore "limited by the vital qualification that arbitration [is] of matters and disputes arising out of the relation governed by contract." Litton Fin., 501 U.S. at 204.

In the case now before the Court, the threshold issue is centered on a determination regarding the arbitrability of the grievances alleged by plaintiff in its second amended complaint. Both agreements under which these grievances arise contain clauses that state grievances based on events which occur after that contract's termination are expressly excluded from the jurisdiction of the arbitrator. Defendant argues that this language provides for a substantive limitation on its duty to arbitrate (leaving for resolution whether or not the parties have contractually agreed to submit the instant grievances to arbitration), which presents an issue for the Court's determination. See, e.g., Auto., Petroleum & Allied Indus. Employees Union, Local No. 618 v. Town & Country Ford, Inc., 709 F.2d 509, 514 (8th Cir. 1983) ("[T]he district court's role is limited to the determination of whether the parties are obligated to submit the 'subject matter' of a dispute to arbitration."). Plaintiff disagrees, and argues that compliance with article XI, section 4 of the agreements is a procedural rather than substantive requirement (leaving for resolution whether or not article XI, section 4's procedures apply to the instant grievances and whether the parties have followed or excused these procedures), which presents an issue the Court should defer to an arbitrator for determination. See, e.g., id. at 511 ("Once it is determined...that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which

grow out of the dispute and bear on its final disposition should be left to the arbitrator." (quotation omitted)).

As the Court notes above, the Supreme Court has held that, in cases where the parties fail to exclude from arbitrability contract disputes that arise after termination, a basis for concluding that the parties intended to arbitrate such disputes exists. However, the case now before the Court does not present an instance where the parties failed to exclude post-termination disputes from arbitration. Instead, using express and clear language, the parties agreed that grievances which arise under the agreements but which are based on events occurring after termination are excluded from the jurisdiction of the arbitrator. As the second amended complaint alleges events (defendant's unilateral actions on October 31, 2008, and January 1, 2010) that occurred after the termination of the agreements (the 1994 Agreement expired in 2002 and the 2002 Agreement expired in 2006), the grievances based on such events are excluded from the jurisdiction of the arbitrator. By the terms of the parties' agreements, a duty to arbitrate the instant grievances does not exist, and the Court cannot compel defendant to arbitrate in the absence of a contractual obligation to do so.

In holding that there exists no contractual obligation to arbitrate the instant grievances, the Court concurs with defendant that compliance with article XI, section 4 of the agreements is a substantive requirement. That the Court must look to <u>when</u> the

9

events giving rise to the grievances occurred, thereby incorporating a temporal element into the analysis, does not necessarily convert the inquiry into one of procedure. Rather, the question presented is whether the force of the arbitration clauses contained in the parties' agreements extends to the instant grievances. This requires a determination as to whether or not the parties have contractually agreed to submit the subject matter of the instant grievances to arbitration, which is for the Court, not an arbitrator, to decide.

Plaintiff also argues that, based on the Supreme Court's decision in <u>Litton Financial</u>, the instant grievances are arbitrable for two independent bases: (1) because, based on standard rules of contract interpretation, the instant grievances involve a right which survives the expiration of the parties' agreements; and (2) because the right accrued or vested during the term of either agreement. The Supreme Court in <u>Litton Financial</u> stated as follows:

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

<u>Litton Fin.</u>, 501 U.S. at 205-06. However, the Supreme Court did not set forth three instances where parties <u>must</u> arbitrate a dispute. Rather, as the Supreme Court in <u>Litton Financial</u> was

10

analyzing the arbitration clause of an expired agreement that had no express provision regarding the arbitration of post-termination grievances (referred to by the Supreme Court as the agreement's "unlimited arbitration clause," id. at 205), the rule set out in Litton Financial merely provides three exceptions to the general rule that when a contract has expired the parties are released from their respective contractual obligations and that any dispute between them cannot be said to arise under the contract. See Poore v. Simpson Paper Co., 566 F.3d 922, 927 (9th Cir. 2009). There is no broad principle requiring that all post-termination grievances remain arbitrable regardless of the applicable contract's language, and the starting point of the Court's analysis (before consideration of general rules and exceptions thereto) is always the parties' agreement. As the Court finds an express clause regarding the jurisdiction of an arbitrator for grievances based on post-termination events, the Court's analysis is over.

The parties have extensively briefed the issue of whether plaintiff's rights vested while the agreements were in effect. The Court does not herein decide the vesting issue because ruling on that issue is not necessary in light of the parties agreement that grievances based on post-termination events are outside the jurisdiction of the arbitrator. That is, regardless of whether the instant grievances concern rights that vested during the effective dates of the agreements, because of when the alleged violations

occurred, article XI, section 4 expressly proscribes arbitration of such grievances.

The Court finds that the parties agreed to exclude from arbitration the grievances set forth in plaintiff's second amended complaint. Accordingly, plaintiff's second amended complaint, which seeks to compel arbitration, fails to state a claim upon which relief may be granted, and the Court will grant defendant's motion to dismiss. For the above stated reasons,

**IT IS HEREBY ORDERED** defendant St. Louis Post Dispatch's motion to dismiss [Doc. #24] is granted.

Dated this  18th  day of June, 2010.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE